IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

```
Venantius O. Eneje              )   C. A. No. 9:04-1695-SB-RSC
                                )
              Plaintiff,        )
                                )
         -versus-               )   REPORT AND RECOMMENDATION
                                )
Alberto R. Gonzales, Attorney   )
General of the United States,   )
                                )
              Defendant.        )
                                )
```

This employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and 5 U.S.C. § 2302, brought by a federal employee proceeding pro se is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment filed on March 21, 2005. 28 U.S.C. § 636(b).

On May 27, 2005, the plaintiff, Venantius O. Eneje, sued Alberto R. Gonzales, Attorney General of the United States, and alleged that he was discriminated against on the basis of race and national origin in his present job as a physician's assistant (PA) at the Federal Correctional Institution (FCI) at Estill, South Carolina, a facility of the United States Bureau of Prisons (USBOP), and was also retaliated against in several different regards for filing a charge of discrimination and for being a whistle blower. Eneje seeks equitable relief and damages.

Eneje was provided a copy of the defendant's summary judgment motion and exhibits on March 23, 2005, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The plaintiff filed a response to the motion on April 27, 2005, and the defendant filed a reply on May 5, 2005. The plaintiff supplemented his opposition on May 17, 2005, and the defendant filed a reply to the supplement on May 19, 2005. Hence, it appears consideration of the motion is appropriate.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which

2

the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts for purposes of the defendant's motion, either undisputed or taken in the light most favorable to the plaintiff

as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record are as follow.

In January 1992, the defendant hired the plaintiff as a Physicians Assistant, at the FCI at Ashland, Kentucky. On October 5, 1992, the defendant terminated the plaintiff during his probationary period, but after investigating and processing the plaintiff's complaint of discrimination, the defendant reinstated the plaintiff by the Final Agency Decision (FAD) pursuant to 29 C.F.R. § 1614.110 (Eneje I). After the reinstatement, the plaintiff filed a complaint of discrimination stemming from the defendant's calculation of back pay and attorney's fees awarded to him by the FAD. The defendant dismissed this second complaint, and the Equal Employment Opportunity Commission (EEOC), the United States District Court for the Eastern District of Kentucky, and the United States Court of Appeals for the Sixth Circuit affirmed the dismissal.[1] (Enjie v. Ashcroft, 67 Fed. Appx. 901 (6th Cir. 2003), aff'g, 183 F. Supp. 2d 931 (E.D. Ky.), aff'g, EEOC Appeal No. 01973692, 1998 WL 556932 (August 19, 1998) (Eneje II). During the second complaint

---

[1] To the extent Enjie seeks reconsideration of matters adjudicated in Enjie II, they are barred here by principles of res judicata.

of discrimination, Eneje II, the plaintiff transferred to FCI Estill.

On May 17, 2000, the plaintiff applied for a supervisory PA position at FCI Estill, job vacancy number 00-ARO-057. On June 6, 2000, the plaintiff was notified that the job vacancy announcement was closed without selection. On September 28, 2000, PA Luis Calvo was appointed as Acting Supervisory PA at Estill.

In December 2000, the plaintiff was questioned regarding his treatment of an inmate named Johnson. Subsequently, on April 25, 2001, the plaintiff received an overall "exceeds" annual performance appraisal for the period of April 1, 2000 through March 31, 2001.

On May 3, 2001, the plaintiff lost a set of keys to the pharmacy. The pharmacy contained valuable and dangerous drugs and was located inside the prison walls. The keys were found by an inmate and turned into Jacquelyn Reed Bush, the Medical Records Supervisor. She then approached the plaintiff and noticed that he was not wearing his security belt key chain and asked him why he did not have it. Enjie said, "I ain't worrying about that . . . [don't] worry about it." The plaintiff then checked his pockets and realized that the pharmacy keys were missing. Bush handed the pharmacy keys over to the plaintiff and

he repeatedly thanked her. Assistant Locksmith Douglas Schmidt testified that the plaintiff told him that the plaintiff's key chain was broken, and the plaintiff asked Schmidt to issue the plaintiff a new key holder. Special Investigative Supervisor (SIS) M.E. Murphy investigated the plaintiff's loss of the pharmacy keys.

Another employee lost keys as well; Officer Schmidt lost the range house keys and was counseled as a result. As explained by Warden Gal, the range house itself is outside of the prison walls and contained only shooting targets.

In June 2001, defendant appointed PA Raymond Decker as Acting Supervisory PA.

On June 19, 2001, during a health services department meeting, the plaintiff told Warden Steven Gal that Gal had "unqualified people in medical records." Enjie stated that Associate Warden Arcla Washington Adduci immediately shouted to Enjie to "come directly to her office" to get his "deficient write-ups" and that she gave the plaintiff a "counseling statement" concerning Enjie's failure to complete required medical documentation.

The plaintiff testified that his problems began shortly after he made the comments about the unqualified medical staff at the June 19, 2001, staff meeting. Enjie believes that Assistant

Warden Adduci started singling him out for public criticism and criticized him for his treatment of inmate patients Johnson and Rice. Enjie testified that the "only thing that brought [the lost pharmacy keys incident] up was because I spoke my mind and . . . told the Warden that the [medical records] people weren't qualified." Plaintiff also testified that he reported his allegations to the Office of Internal Affairs, Office of Inspector General, and Program Reviewer.

On July 5, 2001, the plaintiff signed a receipt for an "FS" (fully successful) performance log entry which indicated <u>inter alia</u> that he "needs to be more conscientious about his key accountability."

Enjie also claims that, in preparation for the September 2001 health services department program review, he and other PA's were asked to backdate glucometer readings and prison transfer forms. Plaintiff believes that when he objected to backdating the records, he was retaliated against. Plaintiff also indicated that approximately two weeks before the September 2001 program review, Bush used some of his medical chart entries as examples of common charting mistakes. However, Enjie also stated that Bush identified errors made by three other medical practitioners on the staff. Bush testified:

7

> "[Plaintiff] . . . brought it up that how do we know our mistake if nobody brings it to our attention . . . . I was collecting data that week, trying to show . . . the clinicians that they were making simple mistakes, and [Plaintiff] had made a lot of mistakes. . . and to this date. . . [Plaintiff] is still making a lot of mistakes, and he probably was one of the employees making a lot of mistakes."

On August 30, 2001, Enjie received a disciplinary proposal letter which recommended that he be suspended for ten (10) days for the loss of his pharmacy keys and advised him of his right to contest the proposal. Enjie and his union representative responded in writing to the disciplinary proposal. On October 11, 2001, Warden Gal decided to suspend the plaintiff from work for five (5) days for the loss of the pharmacy keys.

Next, in December 2001, Bradley mistakenly scheduled the plaintiff for a two week on-call PA rotation instead of the customary one week on-call rotation, but she corrected the error at once when it was brought to her attention.

Enjie states that he initiated contact with an EEO counselor on October 18, 2001, immediately prior to his departure on extended bereavement leave. Plaintiff filed a formal EEO complaint on January 18, 2002. It is undisputed that the complaint presented the following five issues:  (1) the October 2001 five (5) day suspension for his loss of the pharmacy keys, (2) alleged "harsh and disparate treatment, verbal admonishment

8

and . . . being singled out by the Associate Warden," (3) an "exceeds" performance appraisal instead of "outstanding", (4) being "ordered to backdate and falsify medical documents in order to pass a program review," and (5) non-selection for supervisory PA at FCI Estill and non-selection for an unspecified position at a regional office. The matters presented in this EEO complaint are the matters before the court in the instant action.

## LAW

### TITLE VII

Plaintiff claims various discriminatory actions were taken against him based upon his on race, color, national origin, and in retaliation for filing a prior EEO complaint and civil action under Title VII. These claims are governed by Title VII provisions as they apply to federal employees. 42 U.S.C. § 2000e-16. To the extent Enjie's claims are based on retaliation for whistleblowing activity, those claims are controlled by the Whistleblowing Protection Act, 5 U.S.C. §§ 1214, 1121, and 2302. Both Title VII and the Whistleblowing Protection Act require that a claim must be administratively exhausted prior to seeking relief in federal court.

Each of the discrete acts of which Enjie complained is required to be separately and individually exhausted. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002); Williams

v. Giant Foods Inc., 370 F.3d 423, 429 (4th Cir. 2004); Lewis v. Norfolk Southern, 271 F.Supp. 2d 807, 813 (E.D. Va. 2003); Saunders v. Stone, 758 F.Supp. 1143, 1145-1146 (E.D. Va. 1991). In order to exhaust a complaint, a plaintiff must initiate EEO counseling within forty-five (45) days of each individual act of alleged discrimination. 29 C.F.R. § 1614.105(a)(1); Nelson v. Stone, 958 F.2d 584, 589-590 (4th Cir. 1992) (interpreting 30 day EEO counselor contact requirements of former provisions of 29 C.F.R. § 1613.214(a)(1)); Zografov v. V.A. Medical Center, 779 F.2d 967, 968-69 (4th Cir. 1985). Absent timely EEO Counselor contact a complaint should be dismissed. Jubiak v. Perry, 101 F.3d 23, 26-27 (4th Cir. 1996); Saunders, 758 F.Supp. at 1145.

Enjie has presented an exhausted claim of dispirate discipline in his five day suspension for the loss of his pharmacy keys. In order to establish a *prima facie* case of disparate discipline where no direct evidence is present, as here, a plaintiff must show that he engaged in prohibited conduct similar to that of a person in an unprotected class, and that the discipline imposed on him was more severe than that imposed upon the unprotected person. See, e.g., Moore v. City of Charlotte, 754 F.2d 1100, 1105-1106 (4th Cir. 1985).

## WHISTLEBLOWER PROTECTION ACT

The plaintiff's whistle blowing reprisal claims are governed by the Whistleblower Protection Act, 5 U.S.C. §§ 1214, 1221 & 2302. In order for this court to have jurisdiction over whistleblower reprisal claims, the claims must be properly exhausted. Hooven-Lewis v. Caldera, 249 F.3d 259, 266 (4th Cir. 2001). The steps to properly exhaust whistleblower reprisal claims include the filing of a complaint with the Office of Special Counsel and a timely subsequent appeal to the Merit Systems Protection Board. Pinar v. Dole, 747 F.3d 899, 906, 908, 912 (4th Cir. 1984); Briley v. Nat'l Archives & Records Admin., 236 F.3d 1373, 1376 (Fed. Cir. 2001).

> Except in a case in which an employee, former employee, or applicant for employment has the right to appeal directly to the Merit Systems Protection Board under any law, rule or regulation, any such employee, former employee, or applicant shall seek corrective action from the Special Counsel before seeking corrective action from the Board. An employee, former employee, or applicant for employment may seek corrective action from the Board under section 1221, if such an employee, former employee, or applicant seeks corrective action for a prohibited personnel practice.

Whistleblower Protection Act, 5 U.S.C. § 1214(a)(3).

Furthermore, the employee, former employee, or applicant also has rights of protection from retaliation:

11

> Subject to the provisions of subsection (b) of this section and subsection 1214 (a)(3), an employee, former employee, or applicant for employment may, with respect to any personnel action taken or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of prohibited personnel practice described in section 2302(b)(8), seek corrective action from the Merit Systems Protection Board.

Whistleblower Protection Act, 5. U.S.C. § 1221(a).

## DISCUSSION

A review of the evidence and relevant case law reveals that the defendant's motion should be granted.

Only one of the plaintiff's claims has been properly exhausted at the administrative level. Enjie initiated EEO Counselor contact on October 18, 2001. However, his complaints of non-selection for the Supervisory PA job in June 2000; his non-selection for Acting Supervisory PA in September 2000 and June 2001; his April 2001 performance appraisal, and the performance log entries dated before September 3, 2001, all came after the forty-five (45) day period allowed for an aggrieved employee to initiate EEO Counselor contact and, as a result, were untimely and are not actionable here. Morgan, 536 U.S. at 113-114; Lewis, 271 F.Supp.2d at 813; Saunders, 758 F.Supp. at 1145-1146. Enjie simply took action too late despite the fact that he

timely filed many EEO complaints previously and is an experienced EEO litigator.

Still, Enjie did timely exhaust his claim that he was subjected to disparate discipline for loss of his pharmacy keys because of his race, color, national origin, and prior protected activity. However, Enjie has not presented a prima facie case of disparate discipline because he can point to no other employee who committed an equally severe infraction and received a lesser punishment. His putative comparator is Officer Schmidt who lost the range house keys and was only counseled rather than suspended. In contrast Enjie lost the pharmacy keys and was suspended for five days. However, the severity of what Schmidt did and what the plaintiff did are not comparable. As explained by Warden Gal, the range house itself is outside of the prison walls and contained only shooting targets. Enjie lost keys to the pharmacy which contained valuable and dangerous drugs and further, was located inside the prison walls. Enjie's actions were simply more serious and not comparable to Schmidt's.

Even if Enjie's and Schmidt's infractions had been of comparable seriousness, there is no evidence whatsoever that Enjie was disciplined in retaliation for his protected activity. The protected activity, <u>Enjie I</u> and <u>Enjie II</u>, occurred in 1992 and 1996 and the now complained of discipline was imposed in

October 2001. If anything, the temporal remoteness of the two events raises a negative inference of causation. <u>Breeden v. Clark County School District</u>, 532 U.S. 268, 273, 274 (2001). The defendant is entitled to judgment as a matter of law.

Lastly, Enjie's whistleblower claims fail here for want of administrative exhaustion. Enjie did not present evidence to show he filed a whistleblower complaint with the Office of Special Counsel[2] on any claim. As a result he has failed to properly exhaust his whistleblower claims, and this court is deprived of jurisdiction over those claims. <u>Hooven-Lewis</u>, 249 F.3d at 266, 277; <u>Pinar</u>, 747 F.3d at 906, 908, 912; <u>Deitch v. Bliss</u>, 512 F.Supp. 605 at 607 (E.D.N.C. 1981). Thus, Enjie's claims of whistleblower reprisal should be dismissed. <u>Hooven-Lewis</u>, 249 F.3d at 266 & 277; <u>Pinar</u>, 747 F.3d at 906, 908 & 912; <u>Deitch v. Bliss</u>, 512 F.Supp. 605, 607 (E.D.N.C. 1981).

---

[2] Enjie described contacting the Office of Internal Affairs and the Office of the Inspector General, but not the Office of Special Counsel. <u>See</u> Plaintiff's Deposition 27-34.

## **CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion for summary judgment be granted and this matter ended.

Respectfully submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

November __7__, 2005

15